[Cite as *State v. Pore*, 2012-Ohio-3660.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00190 |
| CHARLES ROSS PORE | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County Court of Common Pleas, Case No. 2011-CR-0354

JUDGMENT:     Affirmed in part; reversed in part; Remanded

DATE OF JUDGMENT ENTRY:     August 13, 2012

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
BY: RONALD MARK CALDWELL
110 Central Plaza, S., Ste. 510
Canton, OH 44702

For Defendant-Appellant

JOHN N. MACKEY
306 Market Avenue North
Suite 1012
Canton, OH 44702

*Gwin, J.,*

{¶1}   Defendant-appellant Charles R. Pore ["Pore"] appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of Rape with a sexually violent predator specification and repeat violent offender specification, one count of Kidnapping with a sexually violent predator specification, a sexual motivation specification and repeat violent offender specification, one count of Aggravated Burglary, with a repeat violent offender specification and one count of Notice of Change of Address; Registration of New Address. Plaintiff-appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2}   Without being employed or having money, Pore approached his victim, E.T. at her residence, which was for sale. Pore had ascertained that E.T. lived there with a roommate, A. B. Pore inquired about the house, and E.T. told him to talk with A.B. since she was the true owner of the house. When Pore called A.B., she told him to go through the realtor, who was Deb McCracken. Pore called McCracken and gave her a fake name (Mike Davis), and feinted interest in buying the house.

{¶3}   On February 27, 2011, Pore came to the house in mid-afternoon and found E.T. home alone. Pore told her that he wanted to leave some contact information, so she let him into the house and led him to the kitchen, where Pore could write on a table. Pore then asked her for a tissue as he had a runny nose, so she turned to get a tissue. Pore then pull a steak knife, which he took from his girlfriend's kitchen, and ordered E.T. to do what he told her to do and she would not get hurt.

{¶4}   Pore next marched E.T. into a bedroom and ordered her to take off her clothes and get naked. Once she complied, Pore marched her to the front door of the

residence and had her lock the front door. Pore then led her back to the bedroom armed with his knife. Pore then had E.T. get on the bed doggie-style first, and then on her back, as he attempted to penetrate her vaginally with his penis. Before trying to enter her, Pore used his finger to stimulate E.T.'s vagina in order to make entry easier. According to Pore, however he was still unable to enter her, in part because E.T. allegedly would not keep still. E.T. also kept asking Pore why he was doing this, and asking him to leave. Pore claimed that he reassured the frightened woman by telling her that he was not going to hurt her. After some 30 minutes, Pore finished and left the home. He later threw away all of his clothing and the knife in a dumpster in the neighborhood.

{¶5}  According to the lab report prepared by a forensic scientist of the Canton-Stark County Crime Laboratory, a semen sample was obtained from the rape kit performed at Aultman Hospital. The results of a comparison analysis revealed:

> DNA typing was performed on the DNA samples prepared from the semen stained vaginal swabs and the dried blood standard of [E.T.]. The results were compared to the DNA profile of [E.T.].
>
> A mixture of DNA profiles from [E.T.] and a male individual was obtained from the vaginal swabs. The male DNA profile (semen source) could be distinguished at fifteen (15) STR loci. The probability of selecting an unrelated individual at random having the same fifteen (15) locus DNA profile as the male individual is approximately 1 in 82,000,000,000,000,000.

To a reasonable degree of certainty (excluding identical twins), Charles R. Pore is the source of the semen on the vaginal swabs.

{¶6} Pore was indicted on April 11, 2011. He was charged with one count of Rape with a sexually violent predator specification and a repeat violent offender specification; one count of Kidnapping with a sexual motivation specification, a sexually violent predator specification and a repeat violent offender specification; one count of Aggravated Burglary with a repeat violent offender specification; and one count of Notice of Change of Address; Registration of New Address. Pore pled guilty as charged on July 21, 2011 and was sentenced on August 3, 2011 as follows:

{¶7} Rape 10 years, sexually violent predator specification 15 years to life, consecutive to Rape; repeat violent offender specification 8 years consecutive to Rape;

{¶8} Kidnapping 10 years, consecutive to Rape; sexual motivation specification 15 years to life-merged with the sexually violent predator specification (Rape); repeat violent offender specification 8 years, consecutive to the Kidnapping and merged with the repeat violent offender specification (Rape);

{¶9} Aggravated Burglary 10 years consecutive (Rape and Kidnapping); repeat violent offender specification 8 years, consecutive to the Aggravated Burglary and merged with the repeat violent offender specification (Rape);

{¶10} Notice of Change of Address, 2 years consecutive to Rape, Kidnapping and Aggravated Burglary.

{¶11} The Court further imposed a sanction of 2 years for the violation of post-release control to be served consecutive to all other counts.

{¶12} Thus, the aggregate sentenced imposed is a total period of incarceration of fifty-seven (57) years to life imprisonment. Pore was further designated as a Tier III offender pursuant to R.C. 2950.01(G). Finally, Pore was ordered to serve mandatory periods of post release control.

*ASSIGNMENTS OF ERROR*

{¶13}  Pore raises four assignments of error,

{¶14} "I. THE TRIAL COURT ERRED WHEN IT SENTENCED MR. PORE TO CONSECUTIVE SENTENCES ON COUNTS 1, 2 AND 3 OF THE INDICTMENT IN VIOLATION OF R.C. 2941.25 - ALLIED OFFENSES OF SIMILAR IMPORT- AND THE DOUBLE JEOPARDY CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS.

{¶15} "II. THE TRIAL COURT ERRED IN SENTENCING MR. PORE TO A SENTENCE OF 57 YEARS TO LIFE IN VIOLATION OF THE EIGHTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION, WHICH PROHIBITS CRUEL AND UNUSUAL PUNISHMENT.

{¶16} "III. THE TRIAL COURT ABUSED IT DISCRETION IN SENTENCING MR. PORE TO 57 YEARS TO LIFE IMPRISONMENT IN VIOLATION OF MR. PORE'S RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶17} "IV. THE APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO."

I.

**{¶18}** In Pore's first assignment of error, he argues that his sentences for Rape, Aggravated Burglary and Kidnapping are contrary to law, as the crimes are allied offenses of similar import, pursuant to R.C. 2941.25.

**{¶19}** R.C 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶20}** In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson* court overruled *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699(1999), "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." The Court was unanimous in its judgment and the syllabus, "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" However, the Court could not

agree on how the courts should apply that syllabus holding. The *Johnson* case lacks a majority opinion, containing instead two plurality opinions, and a separate concurrence in the judgment and syllabus only. *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶71 (DeGenaro, J., concurring in part and dissenting in part).

**{¶21}** Justice Brown's plurality opinion sets forth a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at ¶ 48, 710 N.E.2d 699. It is not necessary that the commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id*.,* quoting *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816(1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

**{¶22}** If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id. at ¶ 51.

**{¶23}** Under Justice Brown's plurality opinion in *Johnson*, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶ 47, 942 N.E. 2d 1061. Rather,

the court simply must ask whether the defendant committed the offenses by the same conduct. Id.

**{¶24}** Justice O'Connor's plurality opinion advocates that the proper inquiry under R.C. 2941.25(A) is not whether the two offenses can be committed with the same conduct, but whether the convictions "arose from the same conduct that involves similar criminal wrongs and similar resulting harm." *Johnson* at ¶ 70 (O'Connor, J., concurring in judgment.) The O'Connor plurality also notes that this determination should be aided by a review of the evidence adduced at trial. *Id.* at ¶ 68–69, 942 N.E.2d 1061. *State v. Helms*, 2012-Ohio-11467, ¶ 79.

**{¶25}** Justice O'Donnell's separate concurrence, joined by Justice Lundberg Stratton, sets forth a slightly different analysis,

> [T]he proper inquiry is not whether the elements align in the abstract as stated in *Rance* but, rather, whether the defendant's conduct, i.e., the actions and behavior of the defendant, results in the commission of two or more offenses of similar or dissimilar import or two or more offenses of the same or similar kind committed separately or with a separate animus as to each. See Black's Law Dictionary (9th Ed.2009) 336 ("conduct" defined as "[p]ersonal behavior, whether by action or inaction").

*Johnson* at ¶ 78 (O'Donnell, J., separately concurring.) *State v. Helms*, 2012-Ohio-11467, ¶ 80-81.

**{¶26}** As Judge DeGenaro from the Seventh District Court of Appeals has noted,

While all three opinions focus on the conduct of the defendant, there are notable distinctions between them. The Brown plurality is still somewhat hypothetical in nature. The determination of "whether it is *possible* to commit one offense and commit the other with the same conduct," still appears to require an abstract comparison. *Johnson* at ¶ 48 (emphasis added). The O'Connor plurality directs the focus of the analysis back to the evidence adduced at trial, while also leaving open the possibility for some comparison of the elements of the offenses: "*Rance,* inasmuch as it requires a comparison of the elements of the offenses *solely* in the abstract, should be overruled." *Johnson* at ¶ 68–69, 942 N.E.2d 1061 (emphasis added). Justice O'Connor also returns to the language of the statute, parsing out the meaning of several key terms: "allied offenses" and "of similar import." *Id.* at ¶ 65–68, 942 N.E.2d 1061. The O'Donnell concurrence emphasizes the importance of removing abstract comparisons from the merger analysis and shifts the focus of the test onto whether the two offenses were committed separately or with a separate animus. *Johnson* at ¶ 78–83, 942 N.E.2d 1061.

*State v. Helms*, 2012-Ohio-11467, ¶ 82 (DeGenaro, J., concurring in part and dissenting in part).

{¶27} We find that in the case at bar, the analysis utilized by the O'Donnell concurrence to be the most appropriate. In fact, the O'Donnell concurrence utilized the following illustration,

Consider the crimes of rape and kidnapping, for example. The elements of each are different. Rape, as defined in R.C. 2907.02(A)(2), is committed when a defendant engages in sexual conduct with another and the defendant purposefully compels the other person to submit by force or threat of force. Kidnapping, as defined in R.C. 2905.01(A)(4), is committed when by force, threat, or deception, or, in the case of a victim under the age of 13 or mentally incompetent, by any means, a defendant removes another from the place where the other person is found or restrains the liberty of the other with the purpose to engage in sexual activity with the victim against the victim's will.

Inevitably, every rapist necessarily kidnaps the victim, because the conduct of engaging in sexual conduct by force results in a restraint of the victim's liberty. Thus, in those circumstances, the conduct of the defendant can be construed to constitute two offenses—rape and kidnapping—and an indictment may contain counts for each, but the defendant may be convicted of only one.

In a different factual situation, however, if the state presented evidence that a defendant lured a victim to his home by deception, for example, and then raped that victim, an indictment may contain separate counts for the rape and for the kidnapping. In this hypothetical, *different* conduct—the luring of the victim by deception and the separate act of rape—results in two offenses being committed separately; therefore, the indictments may contain counts for both offenses and the defendant may

be convicted of both. See, e.g., *State v. Ware* (1980), 63 Ohio St.2d 84, 17 O.O.3d 51, 406 N.E.2d 1112 (the defendant could be convicted of both kidnapping and rape because he lured the victim to his home by deception before raping her).

*State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶81-81(O'Donnell concurring in judgment and syllabus)(Footnotes omitted).

**{¶28}** In the case at bar, Pore was charged with Rape, as defined in R.C. 2907.02(A)(2), Kidnapping as defined in R.C. 2905.01(A)(4) and Aggravated Burglary as defined in R.C. 2905.01(A)(4). In the case at bar we must determine whether the actions and behavior of Pore results in the commission of two or more offenses of similar or dissimilar import or two or more offenses of the same or similar kind committed separately or with a separate animus as to each.

**{¶29}** More than three decades ago, the Supreme Court of Ohio ruled that Rape and Kidnapping are allied offenses of similar import. *State v. Donald*, 57 Ohio St. 2d 73, 386 N.E.2d 1391(1979), syllabus; *State v. Henderson,* 10th Dist. No. 06AP–645. The Supreme Court laid out the requirements in order to determine what constitutes a separate animus for Kidnapping and a related offense. Specifically, the Court stated:

In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is

prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345(1979), syllabus.

**{¶30}** In the case at bar, Pore armed himself with a knife and deceptively gained entrance to E.T.'s home. Threatening E.T. with the knife, Pore moved E.T. from the kitchen to the bedroom. He then ordered E.T. to remove her clothes. At that point, Pore moved E.T. at knifepoint from the bedroom to the living room in order to lock the front door. Pore then forced E.T. at knifepoint to return to the bedroom where the assault occurred.

**{¶31}** With respect to the charge of Aggravated Burglary, we find this crime was complete when Pore deceptively gained entrance into the home. This act was separate, distinct from the subsequent Rape and Kidnapping. Accordingly, under the facts of this case Aggravated Burglary is not an allied offense of either Rape or Kidnapping. Thus, Pore can be convicted and sentenced for Aggravated Burglary.

**{¶32}** In *State v. Logan,* the Supreme Court found no separate animus to sustain separate convictions for rape and kidnapping. 60 Ohio St.2d 126, 397 N.E.2d 1345(1979). In *Logan,* after the victim refused to accept some pills, the "defendant

produced a knife, held it to her throat, and forced her into an alley. Under such duress, she accompanied him down the alley, around a corner, and down a flight of stairs, where he raped her at knifepoint." 60 Ohio St.2d. at 127, 397 N.E.2d 1345.

**{¶33}** In *State v. Price,* the appellant asked the victim if she wanted to engage in sexual intercourse. 60 Ohio St.2d 136, 398 N.E.2d 772(1979). The victim refused and returned to the car. *Id.* The appellant pulled the victim from the backseat of the vehicle to a nearby area where the appellant raped the victim. *Id.* "The force by which [the] appellant removed [the victim] from the car to behind a nearby bush to engage in sexual conduct, as required under the rape statute, is indistinguishable from the force by which [the] appellant restrained [the victim] of her liberty, as required under the kidnapping statute." *Id.* at 143, 398 N.E.2d 772. The Supreme Court held the restraint and asportation of the victim necessary to substantiate the kidnapping offense were not distinct from the rape, either in time or function. *Price* at 143, 398 N.E.2d 772.

**{¶34}** In *State v. Ware,* the victim was unable to find a telephone to request a ride home from a party. 63 Ohio St.2d 84, 406 N.E.2d 112(1980). The appellant offered the victim to use his telephone at his residence. *Id.* The victim accepted appellant's invitation, and they began walking toward his home. After walking several blocks, they hitchhiked a ride from a passing motorist, who dropped them off within a block of appellant's residence. Shortly after they arrived, appellant laughed and stated that he did not have a telephone, and began making advances toward the victim. When she resisted, appellant picked her up, carried her upstairs to a bedroom and, under threats of death, forced her to submit to vaginal and anal intercourse. Appellant thereafter accompanied the victim back to her girlfriend's residence, a few blocks from where he

was subsequently apprehended by the police. Id. The Supreme Court began its analysis by reviewing the decision in *State v. Price*,

> *Price* observes that the defendant's forcible asportation of his victim was to an area within close proximity of the initial confrontation, and was for the purpose of moving her to a place where the rape could be accomplished without detection. In essence, the court found the distance to be spatially insubstantial and the movement purely incidental to the singular purpose of committing a rape.

> The victim in the cause at bar was forcibly moved from the lower level of appellant's residence into the upstairs bedroom, and, if these were the only facts before the court, it could be necessary to reverse appellant's kidnapping conviction. However, R.C. 2941.25(B) provides for conviction for both kidnapping and rape where these "same or similar" offenses are committed separately.

> Under the facts at bar, we conclude that there was an act of asportation by deception which constituted kidnapping, and which was significantly independent from the asportation incidental to the rape itself. The two crimes were committed separately.

63 Ohio St.2d 84, 86-87, 406 N.E.2d 112(1980)(Citations omitted).

**{¶35}** We are constrained to find Pore's commission of the Kidnapping was merely incidental to the Rape. The restraint and movement had no significance apart from facilitating the Rape. No evidence exists in the record of substantial movement, prolonged restraint, or secretive confinement. *Logan,* 60 Ohio St.2d 126, 397 N.E.2d

1345, at syllabus. We find the restraint did not subject the victim to a substantial increase in the risk of harm separate from that involved in the underlying Rape. Accordingly, we find it was plain error not to find the offenses of Rape and Kidnapping to be allied offenses of similar import.

## II, III, IV

{¶36} In light of our disposition of Pore's first assignment of error, we find that Pore's second, third and fourth assignments of error are premature.

## CONCLUSION

{¶37} In accordance with the Ohio Supreme Court's decision in *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25*,* we remand this case to the trial court for further proceedings consistent with that opinion. This decision in no way affects the guilty verdicts issued by the court. It only affects the entry of conviction and sentence. All of Pore's convictions are affirmed.

{¶38} The judgment of the Stark County Court of Common Pleas is affirmed in part; reversed in part; and the case is remanded for further proceedings to resentence Pore in accordance with the law and this Opinion.

By Gwin, J., and

Hoffman, J., concur;

Delaney, P.J., dissents

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN

WSG:clw 0720

*Delaney, J., dissenting*

{¶39}  I respectfully dissent from the majority opinion.

{¶40}  While there is no dispute that rape, in violation of R.C. 2907.02 (A)(2), and kidnapping in violation of R.C. 2905.01(A)(4), may be allied offenses in some cases as defined under the *Johnson* test, the critical issue is whether the crimes were committed separately or with a separate animus for each offense.  R.C. 2941.25.

{¶41}  At the sentencing hearing, the trial court heard from the state and defense counsel, and reviewed both the victim's and Pore's recorded statements and medical records.  The majority opinion sets forth a recitation of those facts.  Based upon these facts, the trial court determined the crimes of aggravated burglary, kidnapping and rape were committed with a separate animus.

{¶42}  Upon appeal, we review de novo the issue of whether Pore's convictions for rape and kidnapping merge as allied offenses of similar import.  In *Logan*, *supra*, the Ohio Supreme Court set forth the following guidelines to establish whether a kidnapping and an offense of the same or similar import are committed with separate animus.  I disagree with the majority's conclusion that, in applying the *Logan* guidelines, the kidnapping  in this case was merely incidental to the rape.

{¶43}  I would find the following factors set forth in *Logan* exist in this case: Pore held the victim at knife point and moved the victim from one room to another, to wit: from the kitchen to the bedroom, from the bedroom to the front door to lock it and impede anyone from leaving or entering, and then back to the bedroom. This evidence sufficiently demonstrates substantial movement which has significance beyond the underlying offense (to prevent escape and detection) and was independent from the

rape. Moreover, the record also shows Pore, while in the bedroom initially, ordered the victim to disrobe and then proceed to cut off her bra with the knife, therefore causing the victim a substantial increase in risk of harm separate and apart from that involved in the underlying rape.

{¶44} Thus, I would find under the circumstances of this case, there was substantial evidence that Pore committed the offenses of rape and kidnapping with a separate animus. Therefore, the crimes were not allied offenses and the trial court's finding should be affirmed.

{¶45} I would overrule the first assignment of error and address the remaining assignments of error set forth by Pore.


_____
JUDGE PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CHARLES ROSS PORE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-00190 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part; reversed in part; and the case is remanded for further proceedings to resentence Pore in accordance with the law and this Opinion.  Costs divided equally between the parties.

 

_____

HON. W. SCOTT GWIN

 

_____

HON. PATRICIA A. DELANEY

 

_____

HON. WILLIAM B. HOFFMAN